# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**LINDA JUDY W.,**

    **Plaintiff,**

    **v.**

**COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,[1]**

    **Defendant.**

          :
          :
          :
          :
          :
          :
          :
          :
          :
          :

**CIVIL ACTION FILE NO.
1:17-cv-02855-AJB**

## <u>O R D E R   A N D   O P I N I O N</u>[2]

Plaintiff Linda Judy W. ("Plaintiff") brought this action pursuant to § 205(g) of

the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), to obtain judicial review of

the final decision of the Commissioner of the Social Security Administration ("the

---

[1]    Carolyn W. Colvin was replaced by Nancy A. Berryhill as the Acting Commissioner of Social Security beginning January 23, 2017. However, Ms. Berryhill's acting status ended as a matter of law pursuant to the Federal Vacancies Reform Act, 5 U.S.C. § 3345 *et seq.* Pursuant to Fed. R. Civ. P. 17(d), a public officer who sues or is sued in an official capacity may be designated by official title rather than by name. Since Ms. Berryhill no longer is the Acting Commissioner, and no acting Commissioner has been designated, the Clerk is **DIRECTED** to identify Defendant by the official title rather than by name.

[2]    The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (*See* Dkt. Entries dated 9/8/17 and 9/13/17). Therefore, this Order constitutes a final Order of the Court.

Commissioner") denying her application for Disability Insurance Benefits ("DIB").[3]

For the reasons set forth below, the undersigned **AFFIRMS** the final decision of the Commissioner.

## I.   *PROCEDURAL HISTORY*

On December 4, 2013, Plaintiff filed her application for DIB alleging a disability onset date of November 1, 2013. [Record (hereinafter "R") 162-65]. Her application was denied initially on March 4, 2014, and upon reconsideration on July 17, 2014. [R75, 93-94]. Thereafter, Plaintiff filed a written request for a hearing. [R109]. Plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on November 18, 2016, where she was represented by counsel, and a

---

[3]   Title XVI of the Act, 42 U.S.C. § 1381, *et seq.*, provides for Supplemental Security Income ("SSI") for the disabled, whereas Title II of the Social Security Act provides for federal DIB, 42 U.S.C. § 401, *et seq.* The relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI. *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)). Title 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI. In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "Period of Disability," or to recover SSI. However, different statutes and regulations apply to each type of claim. Many times parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations herein should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

AO 72A
(Rev.8/8
2)

vocational expert ("VE") testified. [R42-61]. On February 9, 2017, the ALJ denied

Plaintiff disability benefits. [R20-36]. Plaintiff then sought review with the Appeals

Council ("AC"),[4] which review was denied on July 28, 2017, making the ALJ's

decision the final decision of the Commissioner. [R1-6].

Plaintiff filed this action on July 28, 2017, seeking review of the Commissioner's

decision. [Doc. 1]. The answer and transcript were filed on November 13, 2017.

[Docs. 4, 5]. On December 12, 2017, Plaintiff filed a brief arguing for reversal of the

Commissioner's decision, [Doc. 8], and on January 11, 2018, the Commissioner filed

a response in support of the decision, [Doc. 9], to which Plaintiff replied on

January 29, 2018, [Doc. 11]. The matter is now before the Court upon the

administrative record, and the parties' pleadings and briefs,[5] and it is accordingly ripe

for review pursuant to 42 U.S.C. § 405(g).

## II.   *PLAINTIFF'S CONTENTIONS*

Plaintiff's brief contains the following claimed enumerations of error:

1.   The Commissioner's decision is lacking substantial evidence.
     [Doc. 8 at 5].

---

[4]      With her appeal, Plaintiff submitted additional medical records
documenting a visit to her neurologist on July 19, 2016. [R13-15].

[5]      Neither party requested oral argument. (*See* Dkt.).

3

2.     The Commissioner's decision is based upon errors of law.  [*Id.* at 14].

## III.    *STATEMENT OF FACTS*

### A.    Background

Plaintiff was born in August 1960 and was 53 years old on the alleged onset date. [R162].  Plaintiff completed high school and got an associates degree in accounting. [R46].  Plaintiff previously worked as a bookkeeper, but stopped working in 2013 due to her alleged disability.  [R182].   She alleged disability due to migraines, severe anxiety, panic attacks, chronic pain, and hypertension.  [R181].

### B.    Lay Testimony

Plaintiff testified that she worked as a bookkeeper for a church from 2000 until 2013, when she stopped working due to worsening migraines, which caused her to make mistakes.  [R47].  Plaintiff's attorney added that her allegations of chronic pain were migraine related.  [R48].  Plaintiff explained that her migraines caused her to have attendance problems at work, missing days and leaving early, and she was concerned she would be terminated.  [R48-49].  Although her employer tried to accommodate her by reducing her hours, her migraines still caused her to make serious mistakes at work. [R49].  As a result, she resigned.  [*Id.*].

AO 72A
(Rev.8/8
2)

Plaintiff testified that, when she has a migraine, she has nausea, sensitivity to sound and smell, and the pain is so extreme that she cannot function or keep her head up, and just lies down in a dark room and takes her medication (Zomig[6]).  [*Id.*].  She indicated that her migraines typically last two days and, after that, she continues to feel exhausted by it.  [R50].  Plaintiff explained that high barometric pressure, rain, cold, smells, loud noises, and certain foods can trigger her migraines.  [*Id.*].

Plaintiff testified that she also experiences anxiety, both when she feels a migraine coming on and afterwards.  [*Id.*].  She explained that she takes Paxil[7] for the anxiety as well as Xanax.[8]  [R51-52].  She further indicated that she also has social

_____

[6]     Zomig, also known as Zolmitriptan, is used to treat migraines and belongs tp a class of drugs known as triptans, which affect serotonin to narrow the brain's blood vessels and thereby relieve headache, pain, and other migraine symptoms (including nausea, vomiting, sensitivity to light/sound). https://www.webmd.com/drugs/2/drug-5400/zomig-oral/details (last visited 9/13/2018).

[7]     Paxil, also known as Paroxetine, is a selective serotonin reuptake inhibitor (SSRI) used to treat depression, panic attacks, anxiety disorders, and a severe form of premenstrual syndrome (premenstrual dysphoric disorder) that works by helping to restore the balance of serotonin in the brain. https://www.webmd.com/drugs/2/drug-32900/paxil-cr-oral/details (last visited 9/13/2018).

[8]     Xanax (alprazolam) is a benzodiazepine typically used to treat anxiety disorders and panic disorder.  Medline Plus, Alprazolam, https://medlineplus.gov/druginfo/meds/a684001.html (last visited 8/17/18).

AO 72A
(Rev.8/8
2)

anxiety and has an increasing aversion to crowds, which she ameliorates by staying at home.  [R53].

Plaintiff also described problems with her neck and hands.  [R47].  She testified that she has problems with a disc in her neck, which starts hurting if she sits or lies down too long, and takes Flexeril[9] for the pain.  [R52].  She stated that she had tingling in her hands and was "trying to see if I've got the carpal tunnel on my hands because they're drawing up and they're tingling a lot," and indicated that she experienced these symptoms for about five or more years.  [*Id.*].  The tingling makes her very clumsy picking up and dropping stuff.  [*Id.*].

Plaintiff testified that she does not perform household chores regularly and that her husband takes care of her since he is retired and home during the day.  [R50].  She explained that she naps for a couple hours each day after lunch, stays in bed, watches television, and may help fold laundry.  [R51].  Plaintiff can drive but does not do so often (maybe driving the few blocks to the grocery store once a month) because she cannot remember directions well and then panics.  [*Id.*].

---

[9]     Flexeril (cyclobenzaprine) is a skeletal muscle relaxant.  MedlinePlus, Cyclobenzaprine, https://medlineplus.gov/druginfo/meds/a682514.html (last visited 9/20/18).

AO 72A
(Rev.8/8
2)

## C.     Medical Records

### 1.     Treatment Records[10]

Shortly before Plaintiff's alleged disability onset date, on October 24, 2013, she followed up with neurologist David Villasana and Nurse Practitioner Heidi Meyer1 at Kennestone Neurology Associates for refills of Paxil and Zomig. [R520]. She had seen this neurologist for years for migraine headaches, [R524-46, 607-59), with her last visit in June 2013, [R520]. She reported worsening headaches and having resigned from work, and was considering filing for disability. [R520]. On examination, she was anxious, but well groomed and fully oriented, with normal speech. [R521]. She was diagnosed with common migraine without intractable migraine and prescribed medication. [R522]. It was noted a lack of sleep was playing a role in her headaches and mood. [*Id.*]. She was referred to a behavioral specialist and a psychiatrist, and a brain MRI was ordered for her headaches. [*Id.*]. The MRI showed several tiny foci of increased signal seen in the periventricular white matter, which were nonspecific, but

---

[10]     In the Court's scheduling order, the parties were directed to include a summary of facts indicating which medical records were relevant to the claims before this Court. [Doc. 7]. The Commissioner complied with this instruction. [Doc. 9]. Plaintiff did not; instead citing to records within the argument section of her brief. [Doc. 8 at 5-14]. Rather than reconstruct and summarize hundred of pages of Plaintiff's medical records—many of which preceded her amended alleged onset date—the Court will confine its summary to those records explicitly cited by the parties in their briefs.

AO 72A
(Rev.8/8
2)

could be seen with chronic migraines.[11]  [R519].  The study was otherwise unremarkable.  [*Id.*].

On October 29, 2013, Plaintiff saw primary care physician Seema Hisamuddin, M.D., with whom she had established care earlier that month, for a physical examination.  [R687, 705].  Plaintiff was comfortable, in no acute distress, pleasant, alert, and oriented, with no abnormalities on neurological examination.  [R687].  Dr. Hisamuddin's assessments included migraine, unspecified without mention of intractable migraine,[12] and without mention of status migrainosus.[13]  [*Id.*].  Plaintiff asked about applying for disability.  [*Id.*].

---

[11]    Foci are frequently found on MRIs, but can pose diagnostic problems as they may be related to a variety of diagnoses, including migraines, brain aging, ischaemic changes, vasculitis, multiple schlerosis, changes caused by chemotherapy, and other diseases.  *T2-hyperintense foci on brain MR imaging*, Bekiesinska-Figatowska M., *Med Sci Monit.* 2004 Jun; 10 Suppl 3:80-7, available at https://www.ncbi.nlm.nih.gov/pubmed/16538206 (last visited 9/20/18).

[12]    An intractable migraine is another term for a headache that does not subside despite treatment. https://americanmigrainefoundation.org/understanding-migraine/intractable-headache/ (last visited 9/20/18).

[13]    A migraine that lasts for more than 72 hours is called status migrainosus. https://www.webmd.com/migraines-headaches/status-migrainosus-symptoms-causes -treatment#1 (last visited 9/20/18).

AO 72A
(Rev.8/8
2)

In November 2013, Plaintiff returned Dr. Hisamuddin complaining of possible strep throat.  [R477].  Her medical history indicated Plaintiff had migraines since her mid-twenties; various treatments had not helped; and she was taking Zomig.  [*Id.*].

On December 9, 2013, Plaintiff returned to Kennestone Neurology.  [R320].  Her symptoms had stabilized since her last visit in October, and she needed refills of medications, including Zomig.  [*Id.*].  Her mood was better, she had filed for disability, but had not followed up with a psychiatrist or therapist as previously recommended.  [*Id.*, R327].  She described her headaches as "sore," lasting for one day, and improved by Zomig.  [R320].  On examination, she was anxious but well-groomed and oriented, with normal speech.  [R321].  The assessment was common migraine without aura or status migrainosus, improved.  [R322].  She was given medication and advised to exercise daily.  [R322-23].

On February 24, 2014, Plaintiff returned to Paul Simonoff, M.D., for a cardiac reevaluation.  [R457].  Her neurological examination and speech were normal, and she was alert and oriented.  [R458].  Dr. Simonoff assessed "stable" migraine headaches.  [R460].  On March 18, 2014, Plaintiff returned to Dr. Simonoff and was doing better.  [R465].  She was well developed, well nourished, alert, and oriented.  [R466].  Her

9

neurological examination was normal. [*Id.*]. She was taking Zomig for migraine headaches. [R468].

On April 14, 2014, Plaintiff followed up with Kennestone Neurology for the first time since January 13, 2014. [R498]. She reported that Zomig 2.5 mg. worked well, and she did not want to use anything else. [*Id.*]. She reported some level of headache pain one day per week, but her headaches were less severe, and Zomig improved them. [*Id.*]. On examination, she was anxious but well groomed and fully oriented, with normal speech. [R499]. The diagnoses included common migraine without intractable migraine. [R500]. Her brain MRI from 2013 was similar to her brain MRI from 2011. [*Id.*]. She was referred for neuropsychologic testing and advised to exercise 30 minutes daily. [*Id.*].

On April 30, 2014, Plaintiff underwent a neuropsychological evaluation with Steve Shindell, Ph.D., for her cognitive complaints. [R554-55]. Dr. Shindell observed Plaintiff was well developed and well nourished, with good eye contact. [R555]. Her thought content was normal and her mood was affable, with an affect consistent with her mood. [*Id.*]. There was no looseness of associations or psychotic behavior that would interfere with the evaluation. [*Id.*]. Plaintiff reported that she drove on a limited basis and was independent with her dressing, food preparation, housekeeping,

10

shopping, medication, and finances. [*Id.*]. Dr. Shindell concluded the results of his neuropsychological assessment were "generally consistent with a normal profile." [R556]. He noted that Plaintiff was fully oriented and had no problems with basic informational and mental control items. [*Id.*]. She passed a sophisticated test of cognitive effort. [*Id.*]. Her attention and concentration was fair to good, with mild confabulation problems and overall normal scores noted on a memory examination. [*Id.*]. The results of language functioning showed normal results, and her sensory, perceptual, and motor abilities were normal in all spheres. [R557]. Dr. Shindell noted that Plaintiff reported a diffuse pattern of cognitive difficulties and her responses indicated emotional distress, but also noted the possible impact of over-reporting. [R557-58]. Dr. Shindell assessed depression and anxiety disorder. [R558]. He explained the results of his assessment did not suggest any acute neurological process that would be causing the subjective memory symptoms. [R559]. His clinical impression was that her problems were more consistent with anxiety, and he recommended mental health care. [*Id.*].

On June 17, 2014, Plaintiff returned to Kennestone Neurology complaining of numbness and tingling, but that her symptoms had improved. [R563]. She reported headaches lasting four days, and she usually suffered with some level of headache pain

AO 72A
(Rev.8/8
2)

one day per week. [*Id.*]. On examination, she was anxious, but also well groomed, oriented, and spoke normally. [R564]. She was referred to a behavioral specialist, psychiatrist, and psychologist. [R565].

On April 20, 2015, Plaintiff saw Dr. Hisamuddin for a physical examination and symptoms including a headache, dizziness, and ear fluid. [R670, 672]. On examination, Plaintiff was comfortable, in no acute distress, pleasant, alert, and oriented. [*Id.*]. She displayed no abnormalities on neurological examination. [*Id.*]. Dr. Hisamuddin assessed migraine, unspecified without mention of intractable migraine and without mention of status migranosus. [*Id.*]. Dr. Hisamuddin noted that Plaintiff reported "intermittent migraines, especially [with] weather changes." [*Id.*]. Dr. Hisamuddin advised Plaintiff to use nasal spray and antihistamine and continue Zomig, as "this works well for her." [*Id.*].

On July 9, 2015, Plaintiff followed up with Dr. Hisamuddin, who observed that Plaintiff was in no acute distress and was prescribed Zomig. [R667-68]. On July 20, 2015, Plaintiff followed up again with Dr. Hisamuddin, reporting headaches once per week. [R560]. On mental status examination, she was alert, attentive, oriented, and followed commands, and her speech was fluent. [R561]. The diagnoses included common migraine without intractable migraine. [*Id.*]. In subsequent 2015 visits,

12

Plaintiff saw Dr. Hisamuddin with complaints that at times included headaches. [R660, 662, 665, 725]. On examination, she was described as pleasant and in no acute distress. [*Id.*].

In January 2016, Plaintiff underwent another brain MRI, the results of which were normal. [R709]. In July 2016, Plaintiff saw Dr. Hisamuddin and presented with a headache. [R756]. She reported no change since her last visit in January 2016. [*Id.*]. She reported her headaches began in 1986 to 1987, occurred once per week, and lasted two days. [*Id.*]. Dr. Hisamuddin diagnosed mild cognitive impairment, as stated; normal neuropsychological testing two years ago, likely depression; migraine without aura, not intractable, without status migrainosus; adverse reaction to Botox four years ago; and weekly migraine, triggered by barometric pressure. [R757-58]. Dr. Hisamuddin also assessed generalized anxiety disorder, which likely contributed to difficulty concentrating, and for which Plaintiff would be referred to psychiatry. [R758]. On September 1, 2016, Plaintiff followed up with Dr. Hisamuddin for a sinus infection, and she was described as pleasant and in no acute distress. [R735-36].

In October 2016, Plaintiff saw Dr. Simonoff and appeared to be alert, well, and in no distress. [R767]. Neurologically, she was oriented, with normal speech, and no focal findings. [*Id.*]. She had an appropriate mood and affect, and she followed

13

commands. [*Id.*]. Dr. Simonoff's diagnoses included a history of migraine headaches per Dr. Villasana, and labile hypertension with spikes associated with migraine headaches under fair control. [R769]. His recommendations included continuing current medications. [*Id.*].

### 2. Consultative Examinations

On February 25, 2014, Plaintiff underwent a consultative examination with Divinia Dyer, M.D., due to allegations of migraines with severe anxiety, panic attacks, chronic pain syndrome due to migraines, and hypertension. [R358-65]. Plaintiff reported she had been diagnosed with chronic pain and migraines since age 20 and experienced daily headaches and migraines. [R362]. She was observed to be in no acute distress throughout the examination. [R363]. Her heart rate was normal and her neurological exam revealed no abnormalities. [R364]. Dr. Dyer observed no abnormalities on mental status examination, and Plaintiff's mood and affect appeared stable and appropriate. [*Id.*]. Dr. Dyer's assessments included migraine disorder. [*Id.*]. She opined that Plaintiff could perform her activities of daily living and instrumental activities of daily living without any assistance. [R364-65].

On February 28, 2014, Plaintiff underwent a psychological consultative examination with Valerie Besses, Psy.D., due to allegations of migraines, severe

14

AO 72A
(Rev.8/8
2)

anxiety, panic attacks, chronic pain, and hypertension. [R367-71]. On examination, Dr. Besses noted Plaintiff demonstrated no apparent motor abnormalities, had appropriate eye contact, and was pleasant, cooperative, and oriented, although mildly anxious. [R367-68]. Her thought content was unremarkable; her thought process was logical and goal directed; she was attentive and able to sustain conversation and answer interview questions without simplification or repetition; and she demonstrated a normal range of intensity of affect. [*Id.*]. Her speech was normal, and she showed no deficits in expressive or receptive language or significant memory. [*Id.*]. She reported that she spent her day watching television and was capable of directing her daily routine independently, although she was not always able to remain focused and attentive, and used notes to help her remember to do things. [R369-70]. She could write checks, pay bills, and manage a bank account, although her husband did those things. [R370]. She cooked simple meals, shopped with her husband, and had a valid driver's license, although she drove minimally. [*Id.*]. She enjoyed reading and watching television. [*Id.*].

Dr. Besses opined that Plaintiff was capable of understanding, remembering, and carrying out simple and detailed instructions; her concentration was likely moderately impaired for basic work-related functions; she was mildly limited for sustaining

15

AO 72A
(Rev.8/8
2)

concentration, persistence, and pace for timely completion of assigned tasks; she was mildly to moderately limited in her ability to adhere to a typical work schedule; and she was mildly limited in her ability to adapt to the stressors of a typical work environment. [R371].

On March 3, 2014, State agency medical consultant Patricia Schiff, M.D., reviewed Plaintiff's claim file and opined that she could: occasionally lift and/or carry up to 50 pounds; frequently lift and/or carry up to 25 pounds; stand and/or walk about six hours; and sit about six hours. [R68-69]. Dr. Schiff further opined that due to Plaintiff's migraines, she could only frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; and needed to avoid concentrated exposure to hazards. [R69-70].

On June 13, 2014, State agency medical consultant Arthur Lesesne, M.D., reviewed Plaintiff's claim file and opined similarly to Dr. Schiff. [R85-88].

On March 12, 2014, State agency psychological consultant Robbie Ronin, Psy.D., reviewed Plaintiff's claim file and opined that her impairments caused moderate restriction in her activities of daily living and concentration, persistence, or pace, and mild difficulties in social functioning. [R66-67]. Dr. Ronin opined that she could: remember locations and work like procedures; remember short and simple instructions;

complete simple tasks, given her concentration, persistence, understanding, and memory; carry out very short and simple instructions; maintain attention and concentration for an extended period; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; interact appropriately with supervisors and coworkers and the general public; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and adapt to the basic demands of a work environment. [R72].

On July 14, 2014, State agency psychological consultant Fran Shahar, Ph.D., reviewed Plaintiff's claim file and opined similarly to Dr. Ronin. [R83-84, 88-90].

## D. Vocational-Expert Testimony

The VE testified that Plaintiff's past work as a bookkeeper (DOT #210.382-014) was sedentary and with skills that could transfer to other jobs, such as accounting clerk, data entry, and accounts receivable. [R54].

The VE opined that given Dr. Schiff's and Ronin's assessments, and Plaintiff's age, education, and experience Plaintiff would be unable to perform her past relevant work, [R55-56], but could perform other jobs such as grocery bagger, sandwich maker, and hand packager. [R57]. The VE explained that her testimony was in accordance with the DOT. [*Id.*].

AO 72A (Rev.8/82)

## IV.   ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2.   The claimant has not engaged in substantial gainful activity since November 1, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.   The claimant has the following severe impairments: migraines; hypertension; anxiety; depression; and mild neurocognitive disorder (20 CFR 404.1520(c)).

. . .

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

. . .

5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of medium work as defined in 20 CFR 404.1567(c) except that the claimant has the physical residual functional capacity to lift and/or carry 25 pounds frequently and 50 pounds occasionally. She can stand and/or walk with normal breaks for a total of about 6 hours out of an 8-hour workday. The claimant can sit with normal breaks for a total of about 6 hour in an 8-hour workday and so unlimited pushing and/or pulling including the operation of hand and/or foot controls. The claimant can

18

frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She can never climb ladders, ropes or scaffolds. The claimant has unlimited ability to work in extreme cold, extreme heat, wetness, humidity, noise, vibration and respiratory irritants. She must avoid concentrated exposure to workplace hazards. The claimant must avoid concentrated exposure to workplace hazards secondary to migraines. From a mental perspective, the claimant has the ability to remember locations and work like procedures. She is able to remember short and simple instructions. The claimant has sufficient understanding and memory to complete simple tasks. The claimant has the ability to carry out very short and simple instructions. She can maintain attention and concentration for extended periods. She has sufficient concentration and persistence to complete simple tasks. The claimant has the ability to ask simple questions and request assistance. She can accept instructions and respond appropriately to criticism from supervisors. The claimant can interact appropriately with supervisors, coworkers and the public. She had the ability to be aware of normal hazards and take appropriate precautions. The claimant has the ability to travel in unfamiliar places or use public transportation. She can adapt to the basic demands of a work environment.

. . .

6.     The claimant is unable of performing past work (20 CFR 404.1565).

. . .

7.     The claimant was born on August 26, 1960 and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The

19

claimant subsequently changed age category to advanced age (20 CFR 404.1563).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job shills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant had transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

. . .

11.     The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2013, through the date of this decision (20 CFR 404.1520(g)).

[R22-36].

The ALJ found that, although, Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" [R26]. The ALJ noted that "there was no treating physician of record as per SSR 96-

2p, per counsel" and "accorded significant weight to the opinions and assessments of consultative examiner Dr. Dyer, as they are generally consistent with the evidence of record." [R34]. Specifically, the ALJ noted that "Dr. Dyer thoroughly examined the claimant and found . . . no problems with her activities of daily living or instrumental activities of daily living, which she can perform without assistance. There was no language of total disability concluded by Dr. Dyer." [*Id.*]. She accorded lesser weight to psychological consultative examiner Dr. Besses, who opined Plaintiff could carry out detailed instructions, and independent neuropsychologist Dr. Shindell, as "his results did not suggest any acute neurological process than would cause the claimant's subjective memory symptoms but relied on the claimant's self-report." [*Id.*]. In addition, the ALJ accorded significant weight to State Agency opinions as they gave Plaintiff the benefit of all doubt. [*Id.*].

The ALJ concluded that, based on Plaintiff's RFC and the VE's testimony, there were sufficient jobs Plaintiff could perform in the national and state economy. [R35-36].

## V.   *STANDARD FOR DETERMINING DISABILITY*

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically

21

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At

AO 72A
(Rev.8/8
2)

step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. *Doughty*, 245 F.3d at 1278 n.2. To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists. *Id.*

23

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

## VI.    SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If substantial evidence supports the Commissioner's factual findings and the

24

Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal

25

principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

Also, a "court must consider evidence not submitted to the [ALJ] but considered by the Appeals Council when that court reviews the Commissioner's final decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1258 (11th Cir. 2007). In reviewing this additional evidence, the court must evaluate whether this "new evidence renders the denial of benefits erroneous." *Id.* at 1262. This means that the court must "determine whether the Appeals Council correctly decided that the '[ALJ's] action, findings, or conclusion is [not] contrary to the weight of the evidence currently of record.'" *Id.* at 1266-67 (quoting 20 CFR 404.970(b)).

## VII. CLAIMS OF ERROR

### A. Parties' Arguments

Plaintiff's claims that the ALJ's decision was unsupported by substantial evidence center on the ALJ's assessment of Plaintiff's migraines. [Doc. 8 at 5]. First, Plaintiff claims, without any citation, that "the agency really does not have a way to properly evaluate the functional limitations arising from these severe headaches" because "on objective clinical findings [emphasized by the SSA]–such as CT scans, X-

rays, MRIs; and neurological abnormalities on physical examinations. . . a migraine sufferer will have completely normal findings . . ." [*Id.* at 5-6].

Second, Plaintiff asserts that the objective medical evidence standard is "irrelevant to migraines" and that the ALJ's finding that she "has not generally received the type of medical treatment one would expect from a totally disabled individual" imposes "an unknown, proprietary standard for the evaluation of migraine headaches." [*Id.* at 7-8]. Plaintiff opines that "[b]ecause there is no medical test available to confirm the presence or severity of migraine headaches, the ALJ improperly relied on the absence of such evidence to discount Plaintiff's testimony. . . 'playing doctor' when she reached her own independent medical conclusion about the diagnosis of Plaintiff's migraine headaches." [*Id.* at 9]. Plaintiff summarized treatment records wherein she reported to her migraine symptoms, the limitations they produced, and the effects of treatment to her medical providers, who diagnosed her with migraines. [*Id.* at 9-13]. Plaintiff argues that, because she was diagnosed with migraines and "there is no 'objective evidence' to discredit . . . that [she] suffered a migraine headache at least one day per week–which would amount to four a month, she would be unable to sustain any work per the testimony of the impartial VE at the hearing." [*Id.* at 14].

AO 72A
(Rev.8/8
2)

Plaintiff also seems to take issue with the ALJ's finding that her migraines only warrant avoidance of concentrated exposures to workplace hazards, citing only Plaintiff's hearing testimony concerning her subjective impairments. [*Id.* at 6]. Plaintiff concedes that the forms used by the State Agency physicians indicated this limitation, but asserts that the forms did not provide a section to account for absenteeism, which is a determinable factor in assessing her migraines. [*Id.* at 7].

To support her second statement of error–that the ALJ's decision was based on errors of law–Plaintiff simply argues that the ALJ did not provide a "legally sufficient reason to discredit the frequency and severity of Plaintiff's migraines, and the fact that they would keep her from meeting the attendance requirements of any work" because of "incorrect reliance on objective clinical findings and unspecified criterion for what one would expect in a 'totally disabled' individual." [Doc. 8 at 14]. Plaintiff argues that "the pain standard does not require objective proof of the pain itself." [*Id.* at 14-15 (citing *Elam*, 921 F.2d at 1215; *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986); *Ortega v. Chater*, 933 F. Supp. 1071, 1075 (S.D. Fla. 1996))].

The Commissioner responds that the ALJ's opinion is based "not only on objective medical evidence, but also on other proper sources of evidence, including medical opinions, Plaintiff's treatment history, and Plaintiff's statements and

AO 72A
(Rev.8/8
2)

activities." [Doc. 9 at 22].  More specifically, the Commissioner points to the medical

opinions of Drs. Dyer, Shindell, Besses, and the State Agency physicians, [*id.* at 17-19],

and diagnostic tests and mental and neurological status examinations that "did not

support Plaintiff's allegations of disabling symptoms."  [*Id.* at 19].  The Commissioner

also points to Plaintiff's own reports that Zomig improved her migraines, that "although

numerous specialists recommended Plaintiff see mental health specialists, Plaintiff did

not do so," as well as her description of her abilities (including driving, and

independently dressing, cooking, housekeeping, and shopping).  [*Id.* at 20-21].

The Commissioner adds that the ALJ accepted Plaintiff's migraine diagnosis, but

a mere diagnosis does not establish limitations. [*Id.* at 22].  Moreover, the

Commissioner argues, the documentation that Plaintiff cites in support of her

limitations is "her own statements regarding her migraine headaches . . . but her

statements are not enough."  [*Id.* at 23 (citing 20 CFR § 404.1528(a))].

Plaintiff's reply asserts, without any citation whatsoever, that, because the ALJ

determined her migraines were a severe medically determinable impairment, she met

her burden of showing that she was precluded from performing her past work and the

ALJ's "boiler-plate defense" ignored her reasonably expected limitations and placed

AO 72A
(Rev.8/8
2)

"inapplicable emphasis on objective clinical findings . . . and evaluated her testimony on an undefined pain standard." [Doc. 11 at 1-2].

The law is well settled in this circuit that a legal claim or argument that has not been briefed is deemed abandoned and that mentioning an issue without providing specific argument in support is not sufficient. *Dawkins v. Glover*, 308 Fed. Appx. 394, 395 (11th Cir. Jan. 23, 2009); *Seay v. United States*, 166 Fed. Appx. 422, 423 (11th Cir. Jan. 26, 2006) (holding that appellant's mere statement that district court improperly dismissed his complaint on *res judicata* grounds without any substantive argument in support amounted to abandonment of his claims even though he argued the merits of his underlying claims). Thus, issues only raised in passing and not clearly raised are deemed abandoned. *Ostborg v. Comm'r of Soc. Sec.*, 610 Fed. Appx. 907, 913 (11th Cir. May 29, 2015) ("Abandonment can occur when an appellant only makes passing reference to a claim.") (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681-82 (11th Cir. 2014) (explaining that appellant abandoned a claim when he did not address holdings of district court other than to make passing references to the holdings without advancing any arguments or citing any authorities to establish they were in error)). Accordingly, Plaintiff's bald assertion that she met her burden,

AO 72A
(Rev.8/8
2)

without more, constitutes abandonment or waiver of this issue, and is insufficient to present an issue before this Court for review.

**B.     Analysis**

It is undisputed that Plaintiff was diagnosed with migraines, there is no treating source opinion regarding the affect that they have on her ability to work, and there are no objective medical records (such as lab results or imaging) confirming their disabling affects. Therefore, Plaintiff's statements of error turn on the ALJ's assessment of the overall record and Plaintiff's subjective impairments. In other words, Plaintiff contends that: (1) substantial evidence does not support the ALJ's decision and (2) the ALJ erred in not fully crediting Plaintiff's account of her impairments.

As regards the ALJ's assessment of the record, the Commissioner correctly notes that the ALJ did not rely solely on objective medical evidence to reach her conclusions. She relied on the opinions of examining and consultative physicians and the RFC adopted their assessments and recommendations.   [Doc. 9 at 22].  For example, Dr. Dyer, whom the ALJ accorded significant weight because she thoroughly examined Plaintiff, [R34], opined that Plaintiff could perform her activities of daily living and instrumental activities of daily living without any assistance, [R364-65]. While the ALJ gave less weight to Dr. Besses' opinion, she actually adopted a more

AO 72A
(Rev.8/8
2)

restrictive RFC than the limitations Dr. Besses assessed. [*Id*.]. Plaintiff offers no citation to any non-subjective evidence contained in the medical record to contradict the medical opinions upon which the ALJ relied. As a result, the ALJ relied on the only acceptable medical opinions she had; those of the consultative examiners.

The ALJ also relied on Plaintiff's treatment history–noting that she never sought the recommended mental health treatment–and own statements, to medical providers, concerning her daily activities and abilities. [R32-33]. While Plaintiff points to other statements in support of her contention that the ALJ erred, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, as was *not* the case here, is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.' " *Dyer*, 395 F.3d at 1211 (quoting *Foote*, 67 F.3d at 1561) (emphasis in *Dyer*). As the ALJ explained that she relied on medical opinions, objective medical evidence, Plaintiff's statements, and Plaintiff's treatment history, she considered the evidence as a whole and "there is substantially supportive evidence" of the ALJ's decision. *Barron*, 924 F.2d at 230.

As regards the ALJ's rejection of Plaintiff's subjective accounts of her impairments, the Commissioner is correct that–in light of the other evidence of

AO 72A
(Rev.8/8
2)

record–"her statements are not enough." [Doc. 9 at 23]. The ALJ has discretion in making credibility determinations after listening to a claimant's testimony, "[b]ut the ALJ's discretionary power to determine the credibility of testimony is limited by his obligation to place on the record explicit and adequate reasons for rejecting that testimony." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). As a result, the credibility determination cannot be "a broad rejection which is 'not enough to enable [the court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole.' " *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1561). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562. If the ALJ fails to explain the reasons that he discredited a claimant's testimony, the testimony must be accepted as true. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

In evaluating whether a Plaintiff is disabled based on a claimant's testimony regarding his pain or other subjective symptoms, the Eleventh Circuit evaluates whether there is: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson*, 284 F.3d at 1225 (citing *Holt*, 921 F.2d at 1223). The ALJ need not cite

33

to the pain standard so long as "his findings and discussion indicate that the standard was applied." *Wilson*, 284 F.3d at 1225-26.

The pain standard "is designed to be a threshold determination made prior to considering the plaintiff's credibility." *Reliford v. Barnhart*, 444 F. Supp. 2d 1182, 1189 n.1 (N.D. Ala. 2006). Thus, "[i]f the pain standard is satisfied, the ALJ must consider the plaintiff's subjective complaints." *James v. Barnhart*, 261 F. Supp. 2d 1368, 1372 (S.D. Ala. 2003). When a claimant's subjective testimony is supported by medical evidence that satisfies the pain standard, he may be found disabled. *Holt*, 921 F.2d at 1223. If the ALJ determines, however, that claimant's testimony is not credible, "the ALJ must show that the claimant's complaints are inconsistent with his testimony and the medical record." *Rease v. Barnhart*, 422 F. Supp. 2d 1334, 1368 (N.D. Ga. 2006) (Feldman, M.J.).

Here, it is undisputed that the ALJ found that Plaintiff was diagnosed with migraines that could reasonably give rise to her alleged pain. [R26]. However, as previously discussed in regards to Plaintiff's substantial evidence argument, the ALJ explained that she found that the medical evidence–including medical tests, opinions, and treatment decisions, as well as Plaintiff's reports to her medical practitioners and

AO 72A
(Rev.8/8
2)

her daily activities–did not support Plaintiff's subjective statements.  This is precisely how the ALJ is to evaluate Plaintiff's subjective statements.

Accordingly, there was no legal error and the Court **AFFIRMS** the decision on the Commissioner.

## VIII.  CONCLUSION

As the Court finds no error in the claims asserted by Plaintiff, the final decision of the Commissioner is **AFFIRMED**.

The Clerk is **DIRECTED** to enter judgment for Defendant.

**IT IS SO ORDERED and DIRECTED**, this the 20th day of September, 2018.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)